# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:09cr254 (MRK) |
| | : | |
| VICTOR VASILE CONSTANTIN | : | |

## RULING AND ORDER

On November 16, 2009 Defendant Victor Vasile Constantin, a citizen of Romania, pled guilty to both counts of a Two-Count Information [doc. # 1] charging him with bank fraud, in violation of 18 U.S.C. §§ 1344 & 2, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Both counts arose from a scheme in which Mr. Constantin and others installed "skimming devices" on Bank of America automatic teller machines ("ATMs") and "pinhole cameras" near the same ATMs. *See* Information [doc. # 1] ¶ 3. The skimming devices collected information about accounts stored on the magnetic stripes of customers' ATM cards, and the pinhole cameras captured footage of the customers entering the personal identification numbers ("PINs") associated with their accounts. On March 10, 2010, this Court entered Judgement [doc. # 18] against Mr. Constantin, sentencing him to a 48-month total term of imprisonment, with credit for time served from March 26, 2009; a 3-year total term supervised release; a $200.00 special assessment; and $135,236.00 in restitution. Mr. Constantin was once represented by retained counsel, but he is now *pro se*.

Mr. Constantin is currently serving his 48-month term of imprisonment; as of July 22, 2010, he was incarcerated at Metropolitan Detention Center (MDC) Brooklyn in Brooklyn, New York. On that date, Mr. Constantin filed the pending motion, which he styles a "Notice/Motion for the [sic] Immediate Deportation" [doc. # 20]. In the motion, Mr. Constantin asks this Court to order his

1

immediate deportation from the United States to Romania, pursuant to 8 U.S.C. § 1231(a)(4)(B)(i). The Government filed a Memorandum in Opposition [doc. # 21] to Mr. Constantin's motion on August 13, 2010. The Court provided Mr. Constantin with an opportunity to reply to the Government's memorandum, *see* Order [doc. # 20], but Mr. Constantin never filed any reply.

Having now carefully considered Mr. Constantin's motion and the Government's memorandum opposing the motion, the Court concludes that it has no authority to grant the relief Mr. Constantin seeks. In 1996, Congress slightly amended the former 8 U.S.C. § 1252(h)(2)(a) and recodified it as the current § 1231(a)(4)(B)(i), the statute under which Mr. Constantin seeks relief. *See* Pub. L. 104-208, 110 Stat. 3009, § 305(a)(3) (Sept. 30, 1996). Before the amendment and recodification, the Second Circuit held that the former § 1252(h)(2)(a) "provide[d] the Attorney General with the *sole* and unfettered discretion to deport criminal aliens prior to the completion of their sentence[s] of imprisonment." *Thye v. United States*, 109 F.3d 127, 128 (2d Cir. 1997) (emphasis added). In other words, the Second Circuit's view was that the former § 1252(h)(2)(a) allowed the Attorney General to deport an alien serving a federal prison sentence before the end of his or her sentence, but *did not* permit any federal court to order such deportation on its own.

The amended and recodified provision, § 1231(a)(4)(B)(i), now provides:

> The Attorney General is authorized to remove an alien in accordance with the applicable procedures under this chapter before the alien has completed a sentence of imprisonment . . . in the case of an alien in the custody of the Attorney General, if the Attorney General determines that . . . the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in [§] 1101(a)(43)(B), (C), (E), (I), or (L) of this title) and . . . the removal of the alien is appropriate and in the best interest of the United States . . . .

*Id.* The Second Circuit has not yet had occasion to decide whether § 1231(a)(4)(B)(i), like its predecessor, grants "sole and unfettered discretion" to the Attorney General. *Thye*, 109 F.3d at 128.

However, in this Court's view, the differences between the former provision and the current provision are essentially stylistic rather than substantive. It seems that Congress did little more than replace the obsolete term "deport," *id.*, with the now-prevailing term "remove." 8 U.S.C. § 1231(a)(4)(B); *see Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 34 n.1 (2006) ("What was formerly known as 'deportation' is now called 'removal' . . . ."). Just like the former provision, the current § 1231(a)(4)(B)(i) vests the Attorney General and *only* the Attorney General with the authority to remove an alien serving a federal prison sentence before the end of his or her sentence. *See United States v. Marin-Castaneda*, 134 F.3d 551, 556 (3d Cir. 1998); *United States v. Baldauaque*, Nos. 3:95cr81 (JBA), 3:99cv2272 (JBA), 2002 WL 31094962, at *2 (D. Conn. Sept. 6, 2002), *vacated on other grounds*, 338 F.3d 145 (2d Cir. 2003). Any other distinctions between the former provision and the current provision are irrelevant for present purposes.

In sum, while the Court understands Mr. Constantin's desire to return to Romania now instead of serving out his term at MDC Brooklyn or another federal facility, the Court has absolutely no authority to order the Attorney General to remove Mr. Constantin. For that reason, the Court must DENY Mr. Constantin's "Notice/Motion for the [sic] Immediate Deportation" [doc. # 20].

IT IS SO ORDERED.

/s/    Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: February 3, 2011.**